APPEAL, TYPE–C

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:10–cv–00411–RCL
### *Internal Use Only*

| | |
|---|---|
| CATHOLIC HEALTH INITIATIVES IOWA CORPORATION v. SEBELIUS | Date Filed: 03/12/2010 |
| Assigned to: Chief Judge Royce C. Lamberth | Jury Demand: None |
| Cause: 42:2651 Medical Care Recovery | Nature of Suit: 151 Contract: Recovery Medicare |
| | Jurisdiction: U.S. Government Defendant |

**Plaintiff**

| | | |
|---|---|---|
| **CATHOLIC HEALTH INITIATIVES IOWA CORPORATION** *doing business as* MERCY MEDICAL CENTER–DES MOINES | represented by | **Christopher L. Keough** AKIN GUMP STRAUSS HAUER &FELD LLP 1333 New Hampshire Avenue, NW Washington, DC 20036–1564 (202) 887–4038 Fax: (202) 887–4288 Email: ckeough@akingump.com *ATTORNEY TO BE NOTICED* |

V.

**Defendant**

| | | |
|---|---|---|
| **KATHLEEN G. SEBELIUS** *Secretary, United States Department of Health and Human Services* | represented by | **Javier M. Guzman** U.S. Attorney's Office Civil Division 555 4th Street, NW Washington, DC 20530 (202) 616–1761 Fax: (202) 514–8780 Email: javier.guzman2@usdoj.gov *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |
| | | **Mitchell P. Zeff** U.S. ATTORNEY'S OFFICE 555 Fourth Street, NW Washington, DC 20530 (202) 514–7352 Fax: (202) 514–8780 Email: mitchell.zeff@usdoj.gov *TERMINATED: 03/29/2012* *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 03/12/2010 | 1 | | COMPLAINT against KATHLEEN SEBELIUS ( Filing fee $ 350, receipt number 4616028157) filed by CATHOLIC HEALTH INITIATIVES IOWA CORPORATION. (Attachments: # 1 Civil Cover Sheet)(jf, ) (Entered: 03/12/2010) |
| 03/12/2010 | | | SUMMONS (3) Issued as to KATHLEEN SEBELIUS, U.S. Attorney and U.S. Attorney General. (jf, ) (Entered: 03/12/2010) |
| 03/12/2010 | 2 | | LCvR 7.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests NONE by CATHOLIC HEALTH INITIATIVES IOWA CORPORATION (jf, ) (Entered: 03/12/2010) |
| 04/12/2010 | 3 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to KATHLEEN SEBELIUS served on 3/18/2010, answer due 5/17/2010. (Keough, Christopher) (Entered: 04/12/2010) |
| 04/12/2010 | 4 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on Attorney General. Date of Service Upon Attorney General 3/23/2010. (Keough, Christopher) (Entered: 04/12/2010) |
| 04/12/2010 | 5 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the US Attorney served on 3/12/2010, answer due 5/11/2010 (rdj) (Entered: 04/13/2010) |
| 05/07/2010 | 6 | | MOTION for Extension of Time to *Answer or Otherwise Respond to Plaintiff's Complaint* by KATHLEEN SEBELIUS (Attachments: # 1 Text of Proposed Order)(Zeff, Mitchell) (Entered: 05/07/2010) |
| 05/07/2010 | | | MINUTE ORDER. In view of defendant's representation that plaintiff does not consent to the relief requested in 6 Defendant's Request for Extension of Time to Answer or Otherwise Respond to Complaint, plaintiff is directed to file its response to defendant's motion, if any, by no later than 9:00 a.m. on May 10, 2010. Defendant is directed to file its reply by no later than 12:00 p.m. on May 10, 2010. Signed by Judge Emmet G. Sullivan on May 7, 2010. (lcegs4) (Entered: 05/07/2010) |
| 05/07/2010 | | | Set/Reset Deadlines:, plaintiff's Response due by 9:00 a.m. 5/10/2010 Defendant's Reply due by 12:00 p.m. on 5/10/2010. (clv, ) (Entered: 05/07/2010) |
| 05/07/2010 | 7 | | Memorandum in opposition to re 6 MOTION for Extension of Time to *Answer or Otherwise Respond to Plaintiff's Complaint* filed by CATHOLIC HEALTH INITIATIVES IOWA CORPORATION. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Keough, Christopher) (Entered: 05/07/2010) |
| 05/10/2010 | 8 | | REPLY re 7 to Plaintiff's Opposition to Defendant's Motion for Enlargement of Time to Answer or Otherwise Respond to Plaintiff's Complaint filed by KATHLEEN SEBELIUS. (Zeff, Mitchell) Modified to add link on 5/11/2010 (znmw, ). (Entered: 05/10/2010) |
| 05/10/2010 | | | MINUTE ORDER. The Court has carefully considered 6 Defendant's Motion for Enlargement of Time to Answer or Otherwise Respond to the Complaint, the opposition and the reply thereto. The Court is sympathetic to plaintiff's position regarding undue delays, especially where defendant does not deny that the administrative record has been compiled and in the possession of the agency –– if |

| | | |
|---|---|---|
| | | not counsel –– since at least as far back as 2009. On the other hand, the Court sees no advantage to moving forward with substantive briefing absent a certified administrative record, on which both parties agree the Court must rely. Indeed, plaintiff itself admits it "would file amended versions of its motion and supporting memoranda with appropriate citations to pertinent pages once Defendant files [the record] and before the Court considers the briefs filed by the parties." Pl's. Opposition at 4. The Court does not see how such a situation could fail to lead to multiple rounds of filings and additional requests for extensions of time, wasting the resources of the parties and the Court. Accordingly, in the interest of minimizing delay, obtaining full and accurate briefing, and managing its docket, the Court hereby GRANTS IN PART AND DENIES IN PART 6 Defendant's Motion for Extension of Time. Defendant shall answer or otherwise respond to the Complaint and file the administrative record by no later than June 11, 2010. Defendant's counsel is directed to work with defendant to ensure that the administrative record is available by that date. In light of both parties' representations to the Court that they wish to file cross–motions for summary judgment, it is further ORDERED that the parties confer and submit by not later than June 18, 2010 a proposed briefing schedule for the filing of dispositive motions to resolve this matter. Further requests for extensions of time will be denied absent exigent circumstances. Signed by Judge Emmet G. Sullivan on May 10, 2010. (lcegs4) (Entered: 05/10/2010) |
| 05/10/2010 | | Set/Reset Deadlines: Answer and Administrative Record due by 6/11/2010, Parties proposed briefing schedule for the filing of dispositive motions due by 6/18/2010. (clv, ) (Entered: 05/10/2010) |
| 06/11/2010 | 9 | ADMINISTRATIVE RECORD *(Notice of filing)* by KATHLEEN SEBELIUS. (Zeff, Mitchell) (Entered: 06/11/2010) |
| 06/11/2010 | 10 | ANSWER to 1 Complaint by KATHLEEN SEBELIUS.(Zeff, Mitchell) (Entered: 06/11/2010) |
| 06/18/2010 | 11 | NOTICE *Proposed Briefing Schedule* by CATHOLIC HEALTH INITIATIVES IOWA CORPORATION re Order on Motion for Extension of Time to,,,,,,,, (Attachments: # 1 Text of Proposed Order)(Keough, Christopher) (Entered: 06/18/2010) |
| 06/21/2010 | | MINUTE ORDER. Upon review of 11 parties' proposed briefing schedule, it is hereby ORDERED that the parties' dispositive motions, oppositions and replies shall be filed with the Court in accordance with the following schedule. Plaintiff shall file its dispositive motion by no later than July 2, 2010; defendant shall file its cross–motion and opposition to plaintiff's motion by no later than August 2, 2010; plaintiff shall file its opposition to defendant's motion and reply in support of plaintiff's motion by no later than September 2, 2010; defendant shall file its reply in support of its cross–motion by no later than October 4, 2010. Signed by Judge Emmet G. Sullivan on June 21, 2010. (lcegs4) (Entered: 06/21/2010) |
| 06/23/2010 | | Set/Reset Deadlines: Dispositive Motions due by 7/2/2010; cross motion/Response to Dispositive Motions due by 8/2/2010; Reply/response to Dispositive Motions due by 9/2/2010; reply to cross motion due by 10/4/10. (clv, ) (Entered: 06/23/2010) |
| 07/01/2010 | 12 | MOTION for Summary Judgment by CATHOLIC HEALTH INITIATIVES IOWA CORPORATION (Attachments: # 1 Text of Proposed Order, # 2 Exhibit |

| | | | |
|---|---|---|---|
| | | | 1, #_3_ Exhibit 2, #_4_ Exhibit 3)(Keough, Christopher) (Entered: 07/01/2010) |
| 07/22/2010 | _13_ | | Consent MOTION for Order *to Alter Briefing Schedule* by KATHLEEN SEBELIUS (Attachments: #_1_ Text of Proposed Order)(Zeff, Mitchell) (Entered: 07/22/2010) |
| 07/22/2010 | | | MINUTE ORDER granting _13_ defendant's consent motion to alter briefing schedule. The briefing schedule entered on June 21, 2010 is hereby modified as follows: defendant shall file its cross–motion and opposition to plaintiff's motion by no later than August 9, 2010; plaintiff shall file its opposition to defendant's motion and reply in support of plaintiff's motion by no later than September 9, 2010; defendant shall file its reply in support of its cross–motion by no later than October 12, 2010. Signed by Judge Emmet G. Sullivan on July 22, 2010. (lcegs1) (Entered: 07/22/2010) |
| 07/22/2010 | | | Set/Reset Deadlines: Cross Motions and opposition due by 8/9/2010. Response and reply due by 9/9/2010. Reply to Cross Motions due by 10/12/2010. (clv, ) (Entered: 07/22/2010) |
| 08/09/2010 | _14_ | | Cross MOTION for Summary Judgment by KATHLEEN SEBELIUS (Attachments: #_1_ Exhibit, #_2_ Text of Proposed Order)(Zeff, Mitchell) . (Entered: 08/09/2010) |
| 08/09/2010 | _15_ | | Memorandum in opposition to re _12_ MOTION for Summary Judgment filed by KATHLEEN SEBELIUS. (Attachments: #_1_ Exhibit, #_2_ Text of Proposed Order)(Zeff, Mitchell) . (Entered: 08/09/2010) |
| 09/09/2010 | _16_ | | Memorandum in opposition to re _14_ Cross MOTION for Summary Judgment *and Opposition to Plaintiff's Motion for Summary Judgment* filed by CATHOLIC HEALTH INITIATIVES IOWA CORPORATION. (Keough, Christopher) (Entered: 09/09/2010) |
| 09/09/2010 | _17_ | | REPLY to opposition to motion re _12_ MOTION for Summary Judgment filed by CATHOLIC HEALTH INITIATIVES IOWA CORPORATION. (Keough, Christopher) (Entered: 09/09/2010) |
| 10/12/2010 | _18_ | | REPLY re _14_ Cross MOTION for Summary Judgment filed by KATHLEEN SEBELIUS. (Zeff, Mitchell) . (Entered: 10/12/2010) |
| 10/26/2010 | _19_ | | NOTICE *of Filing of Joint Appendix re _9_ ADMINISTRATIVE RECORD by CATHOLIC HEALTH INITIATIVES IOWA CORPORATION (Attachments: #_1_ Appendix Volume 1, #_2_ Appendix Volume 2, #_3_ Appendix Volume 3)(Keough, Christopher) Modified on 10/27/2010 to supplement docket text (jf, ). (Entered: 10/26/2010)* |
| 01/21/2011 | | | Case reassigned to U.S. District Judge Robert L. Wilkins. Judge Emmet G. Sullivan no longer assigned to the case. (ds) (Entered: 01/21/2011) |
| 06/16/2011 | _20_ | | NOTICE of Change of Address by Christopher L. Keough (Attachments: #_1_ Certificate of Service)(Keough, Christopher) (Entered: 06/16/2011) |
| 10/07/2011 | _21_ | | Case Reassigned to Chief Judge Royce C. Lamberth. Judge Robert L. Wilkins no longer assigned to the case. (jeb, ) (Entered: 10/07/2011) |
| 01/30/2012 | _22_ | 8 | ORDER AND JUDGMENT granting _12_ plaintiff's Motion for Summary Judgment; denying _14_ defendant's Cross–Motion for Summary Judgment. Signed |

| | | | |
|---|---|---|---|
| | | | by Chief Judge Royce C. Lamberth on January 30, 2012. (lcrcl4) (Entered: 01/30/2012) |
| 01/30/2012 | 23 | 10 | MEMORANDUM OPINION. Signed by Chief Judge Royce C. Lamberth on January 30, 2012. (lcrcl4) (Entered: 01/30/2012) |
| 03/29/2012 | 24 | 6 | NOTICE OF APPEAL re 22 Order and Judgment and 23 Memorandum Opinion by KATHLEEN G. SEBELIUS. Fee Status: No Fee Paid. Parties have been notified. (Guzman, Javier) Modified to add links on 3/30/2012 (znmw, ). (Entered: 03/29/2012) |
| 03/29/2012 | 25 | | NOTICE OF SUBSTITUTION OF COUNSEL by Javier M. Guzman on behalf of KATHLEEN G. SEBELIUS Substituting for attorney Mitchell P. Zeff (Guzman, Javier) (Entered: 03/29/2012) |

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CATHOLIC HEALTH INITIATIVES - IOWA CORP. d/b/a MERCY MEDICAL CENTER - DES MOINES, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 10-cv-411 (RCL) |
| KATHLEEN SEBELIUS, Secretary, U.S. Department of Health and Human Services, | ) ) ) ) | |
| Defendant. | ) ) ) | |

## NOTICE OF APPEAL

Notice is hereby given that Kathleen Sebelius, Secretary of the United States Department

of Health and Human Services, defendant in the above-captioned case, hereby appeals to the

United States Court of Appeals for the District of Columbia Circuit from the final judgment

(granting Plaintiff's motion for summary judgment and denying Defendant's cross-motion for

summary judgment) entered in this action on January 30, 2012.

Dated: March 29, 2012                    Respectfully submitted,

                                         RONALD C. MACHEN JR
                                         D.C. BAR #447889
                                         United States Attorney

                                         RUDOLPH CONTRERAS
                                         D.C. BAR # 434122
                                         Chief, Civil Division

                               By:    __/s/_____
                                         JAVIER M. GUZMAN
                                         D.C. BAR # 462679
                                         Assistant United States Attorney
                                         Civil Division

555 Fourth Street, N.W.
Washington, D.C. 20530
Tel.: (202) 616-1761
Fax: (202) 514-8780 (fax)
Email: Javier.Guzman2@usdoj.gov

OF COUNSEL:

WILLIAM B. SCHULTZ
Acting General Counsel

JANICE L. HOFFMAN
Associate General Counsel

MARK D. POLSTON
Deputy Associate General Counsel
        for Litigation

ROBERT W. BALDERSTON
Attorney
CMS Division
United States Department of Health
        and Human Services

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CATHOLIC HEALTH INITIATIVES - IOWA,** ) | |
| **CORP. d/b/a MERCY MEDICAL CENTER -** ) | |
| **DES MOINES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 10-cv-411 (RCL)** |
| ) | |
| **KATHLEEN SEBELIUS, Secretary** ) | |
| **United States Department of** ) | |
| **Health and Human Services,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## ORDER AND JUDGMENT

For the reasons stated in the accompanying Memorandum Opinion filed this date, it is hereby

ORDERED that plaintiff's Motion [12] for Summary Judgment is GRANTED; it is further

ORDERED that defendant's Cross-Motion [14] for Summary Judgment is DENIED; and it is further

ORDERED that defendant's final decision in this case, dated January 14, 2010, is hereby reversed and vacated; and it is further

ORDERED that defendant shall recalculate the DSH payment due plaintiff for its 1997 cost reporting period, including the dual-eligible exhausted benefit days at issue in the numerator of the Medicaid fraction for the plaintiff's 1997 cost reporting period, and promptly pay the plaintiff the additional payments due as a result of that correction, plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2); and it is further

ORDERED that judgment is entered for plaintiff.

SO ORDERED.

Signed by Royce C. Lamberth, Chief Judge, on January 30, 2012.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CATHOLIC HEALTH INITIATIVES - IOWA,** ) | |
| **CORP. d/b/a MERCY MEDICAL CENTER -** ) | |
| **DES MOINES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 10-cv-411 (RCL)** |
| ) | |
| **KATHLEEN SEBELIUS, Secretary** ) | |
| **United States Department of** ) | |
| **Health and Human Services,** ) | |
| ) | |
| **Defendant.** ) | |
| ———————————————— ) | |

## MEMORANDUM OPINION

Picture a law written by James Joyce[1] and edited by E.E. Cummings.  Such is the Medicare statute, which has been described as "among the most completely impenetrable texts within human experience."  *Rehab. Ass'n of Va. v. Kozlowski*, 42 F.3d 1444, 1450 (4th Cir. 1994).  Certain provisions of this labyrinthine[2] statutory scheme are at issue in this case, which concerns a hospital seeking review of a final decision of the Secretary of the Department of Health and Human Services, who denied it certain payments it believes it is owed for providing care to low-income patients.  Before the Court is plaintiff's Motion for Summary Judgment, Pl.'s Mot. Summ. J. [12], July 7, 2010, and defendant's Cross-Motion for Summary Judgment.  Def.'s Cross-Mot. Summ. J. [14], Aug. 9, 2010.   Having carefully considered the motions, the oppositions, the replies, the administrative record in this case, and the applicable law, the Court will grant plaintiff's Motion and deny defendant's Cross-Motion.  A review of the background of the case, the governing law, the parties' arguments, and the Court's reasoning in resolving those

---

[1] The Court clarifies, however, that by making this analogy, it is referring not to Joyce's early work, such as *Dubliners* or *A Portrait of the Artist as a Young Man*, but his later period, specifically *Finnegan's Wake*.
[2] *See Ne. Hosp. Corp. v. Sebelius*, 657 F.3d 1, 17 (D.C. Cir. 2011) (quoting Learned Hand, *In Memoriam: Thomas Walter Swan*, 57 Yale L.J. 167, 169 (1947)).

arguments follows.

## I.   BACKGROUND

### A.  Medicare and the "Disproportionate Share Hospital" Adjustment

Medicare is a federal program that provides health insurance for the elderly and disabled. It reimburses qualifying hospitals for services provided to eligible patients.  *See generally Cty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1008 (D.C. Cir. 1999).  The Department of Health and Human Services ("HHS"), currently led by Secretary Kathleen Sebelius, is the agency charged with administering the Medicare program, and one of its operating components—the Centers for Medicare and Medicaid Services ("CMS")—handles the hospital reimbursements.

The Medicare statute have five parts.  Part A of Medicare provides insurance for hospital and hospital-related services.  42 U.S.C. § 1395c; *see Northeast Hospital*, 657 F.3d at 2.  This includes coverage for "inpatient hospital services"—*i.e.*, (generally speaking) overnight stays in a hospital.  42 U.S.C. § 1395d(a)(1).  Medicare Part A's coverage for inpatient hospital services is limited to a certain number of days of care, after which such coverage is "exhausted."[3]  *See id.*  Parts B, C, and D of Medicare concern other health care programs not relevant to this case.  *See Northeast Hospital*, 657 F.3d at 2–3.  Part E of Medicare, among other provisions, establishes a "prospective payment system" through which hospitals are reimbursed for Part A inpatient hospital services.  42 U.S.C. § 1395ww(d).

Medicare reimbursements are subject to a variety of hospital-specific adjustments.  *See id.*  One of these adjustments is for "disproportionate share hospitals" ("DSHs"), which "serve[] a significantly disproportionate number of low-income patients."  *Id.* § 1395ww(d)(5)(F)(i)(I); *see also Northeast Hospital*, 657 F.3d at 3.  The DSH adjustment reflects Congress's view that low-income Medicare patients are often in poorer health than the run-of-the-mill Medicare

---

[3] The first 90 days of inpatient hospital care are covered, and a beneficiary may then elect to use up to 60 "lifetime reserve days" beyond the first 90 days.  42 C.F.R. § 409.61(a).

2

patient, and consequently more costly for a hospital to treat.  *See Adena Reg'l Med. Ctr. v. Leavitt*, 527 F.3d 176, 177–78 (D.C. Cir. 2008).

This is where things start to get tricky.  A hospital's DSH adjustment for a particular cost reporting period depends on the hospital's "disproportionate patient percentage" ("DPP").  42 U.S.C. § 1395ww(d)(5)(F)(v).  The DPP is not the *actual* percentage of low-income patients served by the hospital during the relevant period.  It is an indirect, or "proxy measure for low income."  H.R. Report No. 99-241, at 16 (1985), *reprinted in* 1986 U.S.C.C.A.N. at 594.  To add a bit more complexity, the DPP is itself the sum of two other fractions: the "Medicare fraction" and the "Medicaid fraction."[4]  42 U.S.C. § 1395ww(d)(5)(F)(vi).  The Medicare fraction is defined as:

> the fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under part A [of Medicare] . . . and were entitled to supplementary security income benefits . . . , and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were entitled to benefits under part A [of Medicare] . . . .

*Id.* § 1395ww(d)(5)(F)(vi)(I).  The Medicaid fraction—which is central to this case—is defined as:

> the fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consists of patients who (for such days) were eligible for medical assistance under a State [Medicaid] plan . . . , but who were not entitled to benefits under part A [of Medicare] . . . , and the denominator of which is the total number of the hospital's patient days for such period.

*Id.* § 1395ww(d)(5)(F)(vi)(II).  At the simplest level, each of these fractions is arrived at by dividing a certain type of patient day by another type of patient day, to determine the proportion of the first type to the second.  If these two proportions are added up, the resulting

---

[4] The Medicare and Medicaid fractions are sometimes called the "Medicare proxy" and the "Medicaid proxy."  To make matters worse, the "Medicare fraction" or "proxy" is also often called the "SSI fraction" or "proxy," since it involves patients entitled to Social Security benefits.

"disproportionate patient percentage" may show that a hospital, for that cost reporting period, served a disproportionately high number of low-income patients, was a "disproportionate share hospital," and so is entitled to a DSH adjustment to its Medicare reimbursement.

Furthermore, as these two definitions show, both the Medicare and Medicaid fractions include the phrase, "entitled to benefits under part A [of Medicare]."  However, the fractions make use of this phrase differently.  While the Medicare fraction includes, in both its numerator and denominator, patient days made up of patients who were "entitled to benefits under part A [of Medicare]," in the Medic*aid* fraction, the phrase "entitled to benefits under part A [of Medicare]" appears only in its numerator, and such days are *excluded*, not included.  Said another way, if a patient staying at a hospital is "entitled to benefits under part A [of Medicare]," that day is counted in the numerator of the Medicare fraction (so long as the patient is also "entitled" to Social Security benefits); but, that same day would *not* be counted in the numerator of the Medicaid fraction, because only days attributable to patients who were "eligible" for Medicaid and "*not* entitled to benefits under part A [of Medicare]" can be counted.

Determining a hospital's ultimate DSH adjustment involves some auditing and some math, and the Medicare statute entrusts these tasks, not to hospitals or even HHS, but to middlemen called "fiscal intermediaries"—usually insurance companies—which act as agents of the Secretary.  *See* 42 C.F.R. §§ 421.1, 421.3, 421.100–.128.  Once a hospital provides its fiscal intermediary with relevant information, the intermediary determines the total amount of reimbursement due and furnishes the provider with a "notice of program reimbursement" ("NPR") reflecting its determination.  *Id.* § 405.1803.  An intermediary may reopen and revise a reimbursement determination no later than three years following the original NPR.  *Id.* § 405.1885.  If a hospital is dissatisfied with the intermediary's calculation of its reimbursement, the hospital can appeal the decision to the Provider Reimbursement Board ("PRRB"), which is

4

an administrative body appointed by the Secretary.  *See* 42 U.S.C. §§ 1395oo(a), (h).  The PRRB can affirm, modify, or reverse the intermediary's determination, and—if the PRRB's decision is appealed—the Secretary can affirm, modify, or reverse the decision of the PRRB.  *See id.* §§ 1395oo(d)–(f).

### B.  This Lawsuit

The plaintiff in this case—Catholic Health Initiatives - Iowa, Corp. ("Catholic Health")—is a not-for-profit corporation that owns and operates Mercy Medical Center ("the Hospital") in Des Moines, Iowa.  Compl. [1] ¶17, Mar. 12, 2010.  The Hospital participates in the Medicare program as a "provider of services," and so receives reimbursements from the program on a regular basis.  *Id.*  The cost reporting period at issue in this case is the Hospital's fiscal year ending June 30, 1997.

After the Hospital provided information related to its 1996 and 1997 cost reporting periods to its fiscal intermediary, the intermediary calculated the Hospital's Medicare reimbursement, and furnished NPRs for those periods.[5]  *Id.*  However, in December 2002, the intermediary revisited those calculations and issued revised NPRs.  *Id.*  Unhappy with this revision, the Hospital appealed the intermediary's decision to the PRRB.  *Id.*; *see also id.* at 455.  The issue before the PRRB in this 2003 appeal was whether the intermediary incorrectly calculated the Hospital's DSH adjustment by excluding the Hospital's "Medicaid-eligible patient days attributable to two patients who had exhausted Medicare Part A benefits."  *Id.* at 101.  However, in early September 2004, before the PRRB considered the appeal, the parties reached an "Administrative Resolution" of the reimbursement dispute.  *Id.* at 455.  Pursuant to this settlement, the intermediary agreed to include some, but not all, of the "Part A exhausted days at issue in the Medicaid fraction for the 1996 and 1997 cost reporting periods."  *Id.* at 102.

---

[5] These NPRs were furnished in September 2008.  AR at 850.

However, in June 2005, the intermediary—based upon what it called "a recent clarification received from CMS"[6]—announced that it would once again revisit the Hospital's DSH adjustment for the 1996 and 1997 cost reporting periods. *Id.* The intermediary then issued another set of revised NPRs, which excluded the same patient days that it had agreed to include pursuant to the September 2004 settlement. *Id.* The Hospital again appealed the intermediary's decision to the PRRB. *Id.*

As was the case in the Hospital's 2003 appeal, the issue before the PRRB in this latest appeal was whether the intermediary erred by excluding from the numerator of the Medicaid fraction patient days attributable to patients who were eligible for Medicaid but who had exhausted their Medicare Part A inpatient hospital services benefits. *Id.* at 31. In March 2009, the PRRB reversed the intermediary's decision, holding that the disputed days should have been included. *Id.* Its decision was based upon the statutory text as well as its reading of previous statements and administrative decisions of CMS and the Secretary. *Id.* at 31–34.

Regarding the Medicare statute, the PRRB concluded that the statute defined "entitled to benefits under part A [of Medicare]"—that is, the phrase in the numerator of the Medicaid percentage, *see* 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II)—as "the right to have payment made on the patient's behalf for covered services." AR at 31 (citing 42 U.S.C. §§ 1395(a), 426(c)(1)). Since the disputed days were attributable to patients who had exhausted their Medicare Part A inpatient hospital services benefit, those patients—the PRRB reasoned—did not have the right to have payment made by Medicare for those days, and so were "not entitled to benefits under part A [of Medicare]" as specified in the Medicaid percentage. *Id.* Therefore the statute's plain language required the inclusion of those days, because they were attributable to patients who were

---

[6] This "clarification" from CMS is its August 2004 final rule, related to Medicare's prospective payments systems, in which it stated that it would not allow the inclusion, in the Medicaid fraction, of "dual-eligible beneficiaries who have exhausted their Part A hospital coverage . . . ." 69 Fed. Reg. 48,916, 49,099 (Aug. 11, 2004).

"eligible [for Medicaid]" and "not entitled to benefits under part A [of Medicare]." *See* 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

The PRRB supported this plain-language argument by referencing prior statements of CMS and the Secretary.  It noted that CMS, in a preamble to a 1990 Federal Register notice, had stated that "[e]ntitlement to payment under Part A ceases after the beneficiary" has exhausted his or her Medicare Part A inpatient hospital services benefit.  AR at 31 (quoting 55 Fed. Reg. 35,990, 35,996 (Sept. 4, 1990)).  This text, however, did not specifically interpret the phrase "entitled to benefits under part A [of Medicare]" in the definition of the Medicaid percentage, but that same phrase as it appears in a subsequent provision of the DSH statute, namely 42 U.S.C. § 1395ww(d)(5)(G)(iv)(IV).  The PRRB also noted that CMS's current policy, at least as of August 2004, was to count only "covered patient days in the Medicare fraction," a position that obviously reflects CMS's interpretation of the phrase "entitled to benefits under part A [of Medicare]" in the Medic*are* fraction to mean "covered" or "paid for" by Medicare.  AR at 33 (quoting 69 Fed. Reg. 48,916, 49,098 (Aug. 11, 2004)).  Finally, the PRRB considered a 1996 administrative decision of the Secretary that specifically concerned the issue of whether days attributable to patients who were eligible for Medicaid but who had exhausted their Medicare Part A inpatient hospital services benefits should be included in the numerator of the Medic*aid* percentage—that is, the precise question before the PRRB (and this Court).  *Id.* at 32 (citing *Presbyterian Med. Ctr. of Philadelphia v. Aetna Life Ins. Co.*, CMS Adm'r Dec., *reprinted in* Medicare & Medicaid Guide (CCH) ¶ 45,032 (Nov. 29, 1996)).  According to the PRRB, the Secretary, in *Presbyterian*, affirmed the PRRB's decision that such days are properly included in the Medicaid fraction.  AR at 32.  These, and other, arguments persuaded the PRRB that the Hospital's DSH adjustment for the 1996 and 1997 cost reporting periods had been incorrectly calculated by the fiscal intermediary.

The Secretary, however, was not persuaded.   In an opinion dated January 14, 2010, the CMS Administrator reversed the PRRB's decision.  *Id.* at 10.  The Administrator's decision was based upon what it dubbed a "long-standing policy" of "excluding [] exhausted days from the Medicaid fraction . . . ."  *Id.* at 6, 8.  The Administrator also disagreed with the PRRB's plain-language argument, finding that the term "entitled" in the Medicare statute's definitions of the Medicare and Medicaid fractions "is not in reference to the right of payment of a benefit, but rather the legal status of the individual as a Medicare beneficiary under the law."  *Id.* at 9. Therefore, according to the Administrator, "while a Medicare beneficiary's benefit period may exhaust or expire, the entitlement for Medicare does not expire."  *Id.*  As a result, the patient days of patients who were eligible for Medicaid but whose Medicare Part A inpatient hospital services benefit had expired should not be included in the Medicaid fraction because such patients remain "entitled to benefits under part A."  *Id.*  The Administrator did not address, however, its 1996 decision in *Presbyterian*, *see supra* at 7, which contradicted this conclusion, except to state (in a footnote) that "[t]o the extent [that] any prior Administrator decisions have otherwise held, they were not consistent with CMS's policy."  *Id.* at 9 n.15.

In March 2010, Catholic Health filed this lawsuit, alleging that the Secretary's decision is contrary to law, arbitrary, and capricious, and not based upon substantial evidence.[7]  Compl. [1] ¶53 (citing 42 U.S.C. § 1395oo(f) and 5 U.S.C. § 706).  Catholic Health also alleges that the Secretary's decision to exclude the disputed days from the numerator of the Medicaid fraction is contrary to the plain meaning of the DSH provisions of the Medicare statute, and inconsistent with the applicable regulations and the Secretary's policy during the relevant period. *Id.* ¶53–56. Catholic Health asks the Court to declare the Secretary's decision invalid, to direct her to recalculate the Hospital's DSH payment for the 1997 cost reporting period and pay interest on

---

[7] This case was reassigned by consent from the Honorable Robert L. Wilkins to this Court in October 2011. Reassignment [21] Oct. 7, 2011.

that sum, and to pay Catholic Health's legal fees and costs. *Id.* ¶59.[8]  The Secretary filed a copy

of the administrative record with the Court in June 2010.  Def.'s Notice [9] 1, Jun. 11, 2010.  In

July 2010, Catholic Health filed a motion for summary judgment, Pl.'s Mot. Summ. J. [12] July

1, 2010, and the Secretary filed a cross-motion for summary judgment the next month.  Def.'s

Cross-Mot. Summ. J. [14] Aug. 9, 2010.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and evidence show that "there is

no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  However, in cases involving review of agency action

under the Administrative Procedure Act ("APA"), Rule 56 doesn't apply due to the limited role

of a court in reviewing the administrative record.  *Select Specialty Hosp. - Akron, LLC v.*

*Sebelius*, No. 10-cv-926, 2011 WL 5042021, *7 (D.D.C. Oct. 25, 2011).  Under the APA, the

agency's role is to resolve factual issues and arrive at a decision that is supported by the

administrative record, and the court's role is to "determine whether or not as a matter of law the

evidence in the administrative record permitted the agency to make the decision it did."

*Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985).  Summary judgment thus

serves as a mechanism for deciding, as a matter of law, whether an agency's action is supported

by the administrative record and is otherwise consistent with the APA standard of review.  *See*

*Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977).

Under the APA, a court must "hold unlawful and set aside agency action, findings, and

conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law," 5 U.S.C. § 706(2)(A), in excess of statutory authority, *id.* § 706(2)(C), or

---

[8] While the patient days at issue in this case appear to involve both the Hospital's 1996 and 1997 cost reporting periods, Catholic Health has only sought recalculation of its DSH payment for the 1997 period.  *See* Compl. [1] ¶59, Mar. 12, 2010; *see also* Pl.'s Mot. Summ. J. [12] 4, July 1, 2010.

"without observance of procedures required by law." *Id.* § 706(2)(D); *see also* 42 U.S.C. § 1395oo(f)(1).  However, the scope of review is narrow.  *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  The agency's decision is presumed to be valid.  *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971).  Also, a court must not "substitute its judgment for that of the agency."  *State Farm*, 463 U.S. at 43.  A court must be satisfied, however, that the agency has examined the relevant data and articulated a satisfactory explanation for its action, "including a rational connection between the facts found and the choice made."  *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006) (citations and quotation marks omitted).

In reviewing an agency's interpretation of a statute, courts use the two-step analysis outlined in *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).  Step one involves determining whether Congress has spoken directly to the "precise question at issue," for if it has, then "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *Id.* at 842–43.  If it has, then that is the end of the matter.  *Nat'l Treasury Employees Union v. Fed. Labor Relations Auth.*, 392 F.3d 498, 500 (D.C. Cir. 2004).  However, if the statute is silent or ambiguous on the question (*Chevron* "step two"), "the question for the court is whether the agency's answer is based on a permissible construction of the statute."  *Chevron*, 467 U.S. at 843.  The agency's interpretation only needs to be reasonable to warrant deference.  *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 702 (1991).

## III.   THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

Catholic Health, eager to at long last receive the DSH payments it believes it has been owed for over fifteen years, moves for summary judgment on two independent grounds.  First, it argues that the Secretary's current interpretation of the words "entitled to benefits under part A [of Medicare]" in the DSH statute flunks the familiar two-step test for judicial review of agency

10

interpretations of statutes set out in *Chevron*.  Pl.'s Mot. Summ. J. [12] 2–4.  Second, it argues that even if the Secretary's current reading of the DSH statute is entitled to deference under *Chevron*, the application of that interpretation to the 1997 period at issue is impermissibly retroactive, and that the Secretary is therefore bound to her contemporaneous interpretation of the relevant statutory terms.  In response, and in support of her own motion, the Secretary argues that the Medicare statute unambiguously forecloses Catholic Health's interpretation, and that, in any case, her interpretation of the relevant language is reasonable and entitled to *Chevron* deference.  Def.'s Cross-Mot. Summ. J. [14] 18–19, 30–36.  While the Secretary does not squarely address Catholic Health's retroactivity argument, she suggests that it has failed to adequately support its claim that the Secretary's contemporaneous understanding of the Medicaid fraction allowed the inclusion of the patient days at issue in this case.  *See id.* at 39.

The Court has considered the entire record in this case, the applicable law, and the parties' arguments, and concludes that regardless of whether the Secretary's current interpretation of the DSH statute is entitled to deference under *Chevron*, that interpretation cannot be applied retroactively to Catholic Health's 1997 DSH adjustment.  Accordingly, the Court will grant Catholic Health's Motion for Summary Judgment and deny the Secretary's Cross-Motion on this ground, without reaching the question of whether the Secretary's current interpretation satisfies the *Chevron* test.

### A.  Legal Standard

Agencies may not promulgate retroactive rules without express congressional authorization.  *Northeast Hospital*, 657 F.3d at 13.  To determine whether a rule is "impermissibly" retroactive, courts "first look to see whether [the rule] effects a substantive change from the agency's prior regulation or practice."  *Id.* at 14 (quoting *Nat'l Mining Ass'n v. Dep't of Labor*, 292 F.3d 849, 860 (D.C. Cir. 2002)).  "If the rule departs from established

practice, we then examine its impact, if any, on the legal consequences of prior conduct."  *Id.*  A rule that alters the "*past* legal consequences of past actions" is retroactive, while a rule that only alters the *future* effect of past actions is not.  *Id.* (quoting *Mobile Relay Assocs. v. F.C.C.*, 457 F.3d 1, 11 (D.C. Cir. 2006)).  Said another way, if a new rule is "substantively inconsistent" with prior agency practice and "attaches new legal consequences to events completed before its enactment," the new rule is retroactive.  *Id.* (quoting *Arkema Inc. v. E.P.A.*, 618 F.3d 1, 7 (D.C. Cir. 2010)).

### B.  Analysis

The Secretary's 2010 administrative decision, in which she applied the agency's current policy of *not* including in the numerator of the Medicaid fraction patient days attributable to patients who were eligible for Medicaid but who had exhausted their Medicare Part A inpatient hospital services benefits, operates retroactively as applied to the 1997 cost reporting period because HHS's current policy is substantively inconsistent with its past policy and practice and because it attaches new legal consequences to events that transpired in 1997.  Since the Secretary is not authorized to apply rules retroactively in the context of DSH calculations, *see Northeast Hospital*, 657 F.3d at 17, her decision is impermissibly retroactive and invalid.

The Secretary practically concedes that the agency has flip-flopped over the years on the question of whether dual-eligible exhausted patient days should be counted in the numerator of the Medicaid fraction, by failing to present any agency statements, regulations, administrative decisions—or anything else—suggesting that HHS's views in 1997 and before were consistent with those expressed in later materials.  *See* Def.'s Cross-Mot. Summ. J. [14] 37–42.  At best, the Secretary discredits a portion of Catholic Health's support for its contention that the agency's policy and practice during the relevant period was to *include* the disputed days.  However, certain items in the record demonstrate conclusively that the Secretary was for including dual-

12

eligible exhausted benefit days in the Medicaid fraction before she was against it.

### 1. The 1986 rulemaking

The Court's first task is to determine whether the Secretary's 2004 final rule, 69 Fed. Reg. 48,916, 49,099 (Aug. 11, 2004), effected a substantive change from HHS's prior policies and practices with respect to the DSH calculation. *See Nat'l Mining*, 292 F.3d at 860. Therefore, the Court will begin at the beginning, by discussing certain statements of the Secretary in interim and final rules implementing the DSH statute in 1986.

In the 1986 interim final rule, the Secretary interpreted the phrase "entitled to benefits under part A [of Medicare]" in the Medi*care* fraction as including only "*covered* Medicare Part A inpatient days . . . ." 51 Fed. Reg. 16,772, 16,777 (May 6, 1986) (emphasis added). At the time, the Secretary offered the same interpretation of the phrase "eligible [for Medicaid]" in the Medi*aid* fraction, stating that "[a]ny day of a Medicaid patient's hospital stay that is not payable by the Medicaid program will not be counted" in the Medicaid fraction.[9] *Id.* This interpretation of "eligible" as "covered" or "paid for" stemmed from the Secretary's reading of the parenthetical phrase "for such days" in the definition of the Medicaid fraction, which suggested to the Secretary that Congress intended that only "Medicaid *covered* days" be included. 51 Fed. Reg. 31,454, 31,460 (Sept. 3, 1986) (emphasis added). The Secretary noted that this interpretation "is consistent with our interpretation of the Medicare portion . . . (which uses similar language) to refer only to Medicare covered days." *Id.*

Therefore, what's clear is that, in 1986, the Secretary interpreted the phrase "entitled to benefits under part A [of Medicare]" in the Medi*care* fraction as referring only to days "covered" or "paid for" by Medicare. Left up in the air, however, is the question of whether, in 1986, the Secretary interpreted the same words—*i.e.*, "entitled to benefits under part A [of Medicare]"—in

---

[9] The Secretary subsequently reversed this position in response to a series of contrary court decisions. *See* 63 Fed. Reg. 40,954, 40,985 (July 31, 1998).

the Medic*aid* fraction in the same way.  The Court notes that the parenthetical that drew the Secretary's attention in the Medicare and Medicaid fractions—"for such days"—modifies "entitled to benefits under part A [of Medicare]" in the Medic*are* fraction, but not the Medic*aid* fraction.   *Compare* 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I)  *with*  § 1395ww(d)(5)(F)(vi)(II). Therefore, it would not have been strange if the Secretary had held a different opinion about the meaning of "entitled to benefits under part A [of Medicare]" in the Medicaid fraction.  However, subsequent statements of the Secretary show that she did interpret the same language the same way in both fractions.

### 2.  The 1995 rulemaking

While neither party—including, oddly enough, Catholic Health[10]—brought this to the Court's attention, it is clear that the Secretary, in a 1995 rulemaking related to the Medicare program's prospective payment systems, interpreted the Medicaid fraction to include in its numerator patient days attributable to patients whose hospital days were not "covered" by Medicare:

> A hospital's disproportionate share adjustment is determined by calculating two patient percentages (Medicare Part A/Supplemental Security Income (SSI) covered days to total Medicare covered days, and *Medicaid but not Part A <u>covered</u> days to total inpatient hospital days*), adding them together, and comparing that total percentage to the hospital's qualifying criteria.

60 Fed. Reg. 45,778, 45,811 (Sept. 1, 1995) (emphasis added).  The proposed rule contained the same language.  *See* 60 Fed. Reg. 29,202, 29,244 (Jun. 2, 1995).  This language was also repeated, verbatim, in later notices published by CMS in the Federal Register.  *See* 61 Fed. Reg. 27,444, 27,273 (May 31, 1996) (proposed rule); 61 Fed. Reg. 46,166, 46,206 (Aug. 30, 1996) (final rule).  Therefore, while the 1986 rulemaking did not expressly tie "entitlement" to Medicare Part A to payment for purposes of the Medicaid fraction, subsequent statements of the

---

[10] Catholic Health does reference a different page of this regulation, to make a different point, in its Opposition to the Secretary's Cross-Motion for Summary Judgment.  Pl.'s Opp'n [16] 44 n.12, Sept. 9, 2010.

14

Secretary show that she did take this step, interpreting the phrase "entitled to benefits under part A [of Medicare]" in both the Medicare *and* Medicaid fractions to require that Medicare have paid for, or covered, the relevant patient days.

### 3.   A 1996 CMS Administrator decision: *Presbyterian Medical Center v. Aetna Life Insurance*

This interpretation of the DSH statute to include in the numerator of the Medicaid fraction patient days that were not "covered" or "paid for" by Medicare is reinforced by a November 1996 decision of the CMS Administrator.  *See Presbyterian Med. Ctr. of Philadelphia v. Aetna Life Ins. Co.*, CMS Adm'r Dec., *reprinted in* Medicare & Medicaid Guide (CCH) ¶ 45,032 (Nov. 29, 1996)); AR at 341.   There were essentially two questions before the Administrator in *Presbyterian*.  First, the Administrator considered whether the PRRB had erred in requiring the inclusion, in the Medicaid fraction, of days for which a patient was "eligible" for Medicaid—in the sense of meeting the program's income and status requirements—but which were not actually covered or paid for by Medicaid.  AR at 341.  Second, the Administrator considered the PRRB's finding that two categories of days—namely, "days of care for the Provider's Medicaid patients [that] were approved for payment by HealthPASS," *id.* at 344, and days "billed to Medicaid because the patients had exhausted their Medicare benefits"—"should be included in the DSH calculation, subject to audit."  *Id.* at 342.  As to the first question, which takes up almost the entire opinion of the Administrator, the Administrator reversed the PRRB, finding that the relevant regulations and the Medicare statute required the inclusion, in the Medicaid fraction, of days that were actually "paid by Medicaid."  *Id.* at 343.

The Administrator, at the very end of the opinion, turned to the second question:

Finally, the Administrator notes that the [PRRB] found that subsequent to the Intermediary's audit a number of days of care for the Provider's Medicaid patients were approved for payment by HealthPASS, *and that a number of days of care were billed to Medicaid because the patients had exhausted their Medicare*

> *benefits . . . . The [PRRB] held that both types of days should be included in the*
> *DSH calculation*, subject to audit.  *The Administrator finds* that the Intermediary
> should review the data concerning these days of care, and to the extent that these
> days were paid for by Medicaid, *they may be properly included in the DSH*
> *calculation*, consistent with 42 C.F.R. [§] 412.106.

*Id.* at 344 (emphasis added).   Therefore, on the exact question before this Court—namely,

whether patient days attributable to patients who were eligible for Medicaid but who had

exhausted their Medicare benefits should be included in the Medicaid fraction—the

Administrator affirmed the PRRB's decision, finding that such days "may be properly included

in the DSH calculation . . . ."  *Id.*  While the Administrator provided no reasons for allowing the

inclusion of these exhausted benefit days, the decision is consistent with the Secretary's

statements, discussed above, interpreting "entitled to part A [of Medicare]" in the Medicaid

fraction as patient days "paid for" or "covered" by Medicare.  *See, e.g.*, 60 Fed. Reg. at 45,811.

### 4.   Subsequent administrative decisions

The summary above shows that at least as of November 1996—that is, the date of the

*Presbyterian* decision—HHS had a policy or practice of allowing the inclusion, in the Medicaid

fraction, of patient days attributable to patients who were eligible for Medicaid but who had

exhausted their Medicare Part A inpatient hospital services benefits.  This policy or practice was

consistent with the Secretary's understanding of the phrase "entitled to benefits under part A [of

Medicare]" in both the Medicare and Medicaid fractions.  However, at some point following the

*Presbyterian* case, HHS's position changed.

The first case before the Administrator post-*Presbyterian* that considered whether dual-

eligible exhausted benefit days should be included in the Medicaid fraction is *Jersey Shore Med.*

*Ctr. v. Blue Cross & Blue Shield Ass'n*, PRRB Dec. No. 99-D4, *reprinted in* Medicare &

Medicaid Guide (CCH) ¶ 80,083 (Aug. 26, 1998); AR at 347.   In *Jersey Shore*, decided in

August 1998, the Administrator vacated the PRRB's determination that two categories of days—

16

including dual-eligible exhausted benefit days—should be included in the numerator of the Medicaid fraction.  AR at 357.  However, the Administrator's basis for vacating that decision related only to the PRRB's decision as to the first category of days—*i.e.*, days for which a patient "was eligible for benefits under the State's 'Charity Care' plan."  *Id.* at 356, 357.  The PRRB's decision with respect to dual-eligible exhausted benefit days was also vacated, but the only reason given by the Administrator for doing so was procedural: to "avoid bifurcation of the case."  *Id.* at 357.  There is no information in the record indicating what occurred in this case following the Administrator's decision.  Therefore, the *Jersey Shore* decision is not inconsistent with Catholic Health's position—namely, that HHS had a policy or practice during the relevant period of allowing dual-eligible exhausted benefit days to be included in the numerator of the Medicaid proxy—but *undercuts* the Secretary's claim that HHS has a "long-standing" policy of excluding such days.  *See id.* at 6.  One would expect that the Administrator in *Jersey Shore*, if such a policy had been in effect, would have made that clear and would have reversed the PRRB on that basis.

It appears that, for nearly two years following the Administrator's decision in *Jersey Shore*, the PRRB still held the view that dual-eligible exhausted benefit days were properly included in the numerator of the Medicaid fraction.  In *Edgewater Med. Ctr. v. Blue Cross Blue Shield Ass'n*, decided in April 2000, the PRRB said, in dicta, that it "continues to maintain that the DSH numerator should include days of dually eligible patients whose Medicare Part A benefits were exhausted and who were eligible for reimbursement under the State's Medicaid plan."  *Edgewater Med. Ctr. v. Blue Cross Blue Shield Ass'n*, PRRB Dec. No. 94-0616 (Apr. 7, 2000), *available at* 2000 WL 394354, at *4.  The PRRB cited for this proposition its decision in *Jersey Shore*, noting that it had been vacated by the Administrator as summarized above.  *Id.*

However, on appeal, the Administrator took issue with the PRRB's statement that dual-

17

eligible exhausted benefit days should be included in the numerator of the Medicaid fraction. *Edgewater Med. Ctr. v. Blue Cross Blue Shield Ass'n*, *reprinted in* Medicare & Medicaid Guide (CCH) ¶ 80,525 (Jun. 19, 2000); AR at 363. The Administrator stated that the DSH statute's text "forecloses the inclusion of the days at issue in this case in the numerator of the Medicaid [fraction]." *Id.* In support of this position, the Administrator held that "the relevant language of the Medicaid [fraction] indicates that it is the status of the patients, as opposed to the payment of the day, which determines whether a patient day is included in the numerator of the Medicaid [fraction]." *Id.* Accordingly, the Administrator concluded that "days of dually eligible patients are not included in the DSH calculation regardless of whether these days include patients who have exhausted their Medicare Part A benefit." AR at 364. However, at no point in its decision did the Administrator grapple with its prior decision in *Presbyterian*, which allowed the inclusion of such days in the Medicaid fraction, or with HHS's prior statements, discussed above, indicating that a different interpretation of the phrase "entitled to benefits under part A" in the Medicaid fraction held sway before the Administrator's June 2000 decision in *Edgewater*. As far as this Court can determine—and the Secretary has not persuaded the Court otherwise— the Administrator's *Edgewater* decision represents the first instance in which HHS interpreted the Medicaid fraction to *exclude* dual-eligible exhausted benefit days.

Following the Administrator's decision in the *Edgewater*, HHS appears to have firmly settled on a new policy of excluding dual-eligible exhausted patient days from the numerator of the Medicaid fraction, based upon a new interpretation of the phrase "entitled to benefits under part A [of Medicare]" in the Medicaid fraction. This culminated in a 2004 rulemaking in which the Secretary stated definitively that it would not permit the inclusion of dual-eligible exhausted benefit days in the Medicaid fraction. *See* 69 Fed. Reg. 49,916, 49,099 (Aug. 11, 2004). It was this guidance from the Secretary that led the Hospital's intermediary, in June 2005, to revisit its

calculation of the Hospital's DSH adjustment for the 1996 and 1997 cost reporting periods.  AR at 852–53.

Therefore, the Court finds that the Secretary's *Edgewater* decision, as well as her 2004 final rule, 69 Fed. Reg. 48,916, 49,099 (Aug. 11, 2004), effected a substantive change from HHS's policies and practices with respect to the DSH calculation during the period at issue in this case.  *See Nat'l Mining*, 292 F.3d at 860.  The Court further finds that this change attaches new legal consequences to the Hospital's treatment of low-income patients during the disputed period.  *See Northeast Hospital*, 657 F.3d at 14.  Since DSHs are entitled to receive an "additional payment" from HHS under the Medicare statute, 42 U.S.C. § 1395ww(d)(5)(F)(i), and since whether a hospital qualifies for this payment and the amount of this payment depends on how the DPP is calculated, any rule that changes how these fractions are calculated changes the legal consequences of treating low-income patients.  *See Northeast Hospital*, 657 F.3d at 17.  Therefore, since the Secretary is not authorized to promulgate retroactive rules for DSH calculations, and because the Secretary's current interpretation represents a substantive change from her prior policy and practice of including dual-eligible exhausted benefit days in the Medicaid fraction, the Secretary's current interpretation may not be retroactively applied to the 1997 cost reporting period.

## IV.     CONCLUSION

Therefore, for the reasons stated above, the Court will grant plaintiff's Motion [12] for Summary Judgment, will deny defendant's Cross-Motion [14] for Summary Judgment, will vacate the Secretary's final decision, and will remand this matter to the Secretary for further proceedings consistent with this Memorandum Opinion.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on January 30, 2012.